**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**JAMES R. MARRIOTT,**

     **Plaintiff,**

 v.                   Case No. 04-C-945

**OPES GROUP, MULTI-NATIONAL**
**STRATEGIES, STEVE PARKER, JOHN RAABE,**
**JAMES LANDIS, and MICHAEL SCHWARTZ,**

     **Defendants.**

## DECISION AND ORDER

On August 27, 2004, James R. Marriott ("Marriott") filed his complaint in Wisconsin state court alleging negligence, breach of contract, and misrepresentation by the defendants. These claims arise out of damages that Marriott allegedly suffered after enrolling in two investment programs offered by the defendants. On September 30, 2004, that action was removed to this Court on the basis of diversity jurisdiction. On August 8, 2005, Multi-National Strategies, LLC, Michael Schwartz ("Schwartz"), and John Raby, (collectively, "the MNS Defendants"), filed a motion to compel arbitration, which the Court now considers.

I.  Background

Marriott's suit arises from allegedly negligent advice given by the Defendants from 2001 through 2003 and related to two investment programs, the "Market Link Deposit" transaction and the "Major-Minor" transaction. (Br. in Supp. of Defs. Multi-National

Strategies, M. Schwartz and J. Raby's Mot. to Compel Arbitration ["Supp. Br."] 1.) Marriott claims that both the IRS and Wisconsin Department of Revenue disallowed certain tax deductions based on his involvement in these investment programs. Marriott complains that the defendants negligently misrepresented the tax benefits of the programs, breached agreements to provide sound tax-planning advice, and misrepresented their expertise.

Relevant to the motion currently pending before the Court, Marriott signed Subscription Agreements related to the investment programs. The Subscription Agreement for the "Market Link Deposit" transaction contains an arbitration clause, stating:

> Investor agrees that any dispute arising out of, relating to or in connection with this Subscription Agreement shall be resolved exclusively by arbitration to be conducted in accordance with the then current rules of the NFA or such other qualified forum . . . applying the laws of the state of Delaware or the United States (as is appropriate), and any judgment shall be final and binding and may be entered into [sic] any court having jurisdiction thereof.

(Aug. 8, 2005 Schwartz Decl., Ex. A, ¶ 21(a).) The other Subscription Agreement–this one for the "Major-Minor" transaction–also contains an arbitration provision, which states that "[a]ny claim for money damages between the parties in connection with this Agreement shall be resolved by binding arbitration on an expedited basis in New York City in accordance with the then-prevailing rules of the American Arbitration Association." (Aug. 8, 2005 Schwartz Decl. ¶ 3, Ex. B at B-5 to B-6.) The MNS Defendants ask the Court to enforce these arbitration provisions.

Marriott counters that the MNS Defendants have no legal basis for compelling arbitration. First, Marriott argues that none of the MNS Defendants have a contractual right

2

to compel arbitration because the Subscription Agreements are only between Marriott and Coastal Trading, LLC ("Coastal"). (In its supporting brief, the MNS Defendants identify Coastal as one of the entities through which the investment programs were developed. (Supp. Br. 3.)) In fact, the MNS Defendants do not dispute that they are not signatories to the Subscription Agreements. Marriott next argues that, if the Court finds the parties bound by the arbitration clauses, it should nevertheless deny the motion because the MNS Defendants waived any right to arbitration when they removed this case to federal court and waited several months before seeking enforcement of the provisions.

II.   Analysis

The Court first sets forth general principles regarding contractual agreements to arbitrate. The Federal Arbitration Act favors the resolution of disputes through arbitration. *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003). However, courts should not construe the Act so broadly that it encompasses claims that parties never intended to arbitrate. *Id*. Courts, rather than arbitrators, usually determine whether parties have agreed to arbitrate claims. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005). This analysis is guided by state law principles governing contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Cont'l Cas. Co.*, 417 F.3d at 730.

As a preliminary matter, the Court inquires whether state or federal law applies when determining whether a non-signatory to an agreement may enforce an arbitration provision

3

contained therein. Unfortunately, neither party has explicitly addressed this important question. In their supporting brief, the MNS Defendants ignore the question and cite both federal cases and Wisconsin state court decisions. In that brief's conclusion, they request relief pursuant to Wisconsin statutory law, the Federal Arbitration Act and the common law of Wisconsin. However, in their reply brief, the MNS defendants cite only federal case law from various circuits. Marriott's opposition brief likewise draws support only from federal cases. Because neither party has identified which law should control and because both Wisconsin state cases and federal decisions have been cited, the Court must choose which law applies.[1]

Decisions from the circuit courts evince some tension regarding whether federal or state law applies when determining if a non-signatory is bound, or may bind another, to an arbitration agreement. The Court of Appeals for the Fourth Circuit has opined that the determination of whether a non-signatory is bound by a contract does not present a question of contract formation or validity and, therefore, is governed by the federal substantive law of arbitrability. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000).[2] By contrast, the Court of Appeals for the Seventh Circuit, in

---

[1] Marriott cites three federal decisions in his opposition brief. Two of those cases stand for the proposition that arbitration is a contractual right. These citations, however, have little to do with which body of law controls the parties' contractual rights. Thus, the Court cannot say that Marriott has acquiesced, in any meaningful sense, to the application of federal law. Interestingly, the MNS Defendants shift solely to federal case law in their reply brief. This may have been a strategic decision once they realized that federal law more strongly supported their arguments.

[2] In contrast to the present case, the Fourth Circuit, in *International Paper Company*, considered an arbitration clause in the context of international commerce, as evidenced by its reference to the Convention on the Recognition and Enforcement of Arbitral Awards. Despite this difference, at least one decision from a district court in the Seventh Circuit has adopted a more generalized view of the Fourth Circuit's position, see *Hoffman v. Deloitte & Touche, LLP*, 143 F.

4

*Continental Casualty Company v. American National Insurance Company*, accepted a district court's application of state, rather than federal law, when determining whether non-signatories to an arbitration agreement could file a motion to compel arbitration. 417 F.3d 727 (7th Cir. 2005). Consistent with the *Continental* decision, this Court believes that the application of federal common law does not necessarily follow from the jurisdictional basis of the pending action.

The present action for state law claims was removed on the basis of diversity. Generally, this means that the Court should apply the substantive law of the state in which it sits. *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Thus, absent any argument from the parties justifying the application of federal common law rules of contract, this Court will look to Wisconsin state law.

Both Subscription Agreements contain choice-of-law provisions. The "Market Link Deposit" transaction Subscription Agreement contains a choice-of-law provision, which states that the agreement "shall be deemed to have been made under, and shall be governed by, and construed in accordance with, the internal laws of the State of Delaware . . . ." (Aug. 8, 2005 Schwartz Decl. Ex. A, A-5 ¶ 20(e).) The "Major-Minor" transaction Subscription Agreement likewise contains a choice-of-law provision identifying the laws of the State of New York as controlling. (Aug. 8, 2005 Schwartz Decl. Ex. B, B-5 ¶ 19(e).) The presence

---

Supp. 2d 995, 1004 n.4 (N.D. Ill. 2001).

5

of these provisions, however, does not defeat the application of Wisconsin law, but rather adds another layer of analysis. "The state law applied by federal courts must be the forum state's law on resolving conflicts of law." *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir. 1987). Thus, Wisconsin law controls the Court's analysis of the choice-of-law provisions in the agreements.

Wisconsin courts recognize the rights of parties to contractually agree that a particular jurisdiction's law shall govern their contractual relations. *Bush v. Nat'l Schs. Studios, Inc.*, 407 N.W.2d 883, 886 (Wis. 1987). However, Wisconsin courts will not enforce such choice-of-law provisions where their application would contravene important public policies. *Id*. In the present action, the parties have not stated that observance of the choice-of-law provisions will thwart any public policy in the forum state or elsewhere. Thus, enforcement of the choice-of-law provisions is permitted under Wisconsin law. There is another wrinkle, however.

Neither party has invoked the choice-of-law provisions in the agreements before this Court. In fact, the briefs are silent on the issue and do not contain any citations to New York or Delaware law. Absent an indication by the parties that they are utilizing the bodies of law that they previously agreed to, the Court will apply the substantive law of its forum state, Wisconsin. *ECHO, Inc. v. Whitson Co., Inc.*, 52 F.3d 702, 707 (7th Cir. 1995); *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n.1 (7th Cir. 1985) (stating that "[w]here neither party argues that the forum state's choice of law rules require the court

6

to apply the substantive law of another state, the court should apply the forum state's substantive law"); *Polar Mfg. Corp. v. Michael Weinig, Inc.*, 994 F. Supp. 1012 (E.D. Wis. 1998).

Having determined that Wisconsin state law applies, the Court returns to the substantive inquiry before it. Wisconsin courts have not directly answered whether a non-signatory may compel a signatory to an agreement to arbitrate. The Court therefore refers to general contract principles as espoused by the Wisconsin state courts. One such principle holds that a party cannot seek to enforce a contract to which he is not a party. *Abramowski v. Wm. Kips Sons Realty, Inc.*, 259 N.W.2d 306, 308 (1977). An exception to this rule lies where the contract was executed for the benefit of a third party, see *Estate of Plautz v. Time Insurance Company*, 525 N.W.2d 342, 346-47 (Wis. Ct. App. 1994), i.e., the agreement was intentionally entered into directly and primarily for the benefit of that person. *Columbia Propane, L.P. v. Wis. Gas Co.*, 640 N.W.2d 819, 830 (Wis. Ct. App. 2001); *Sussex Tool & Supply, Inc. v. Mainline Sewer and Water, Inc.*, 605 N.W.2d 620, 623 (Wis. Ct. App. 1999). "An indirect benefit incidental to the primary purpose of the contract is insufficient to confer third-party beneficiary status." *Sussex Tool & Supply, Inc.*, 605 N.W.2d at 623. The MNS Defendants have not argued that they are third-party beneficiaries of the agreements entered into by Marriott and Coastal. Nor does the plain wording of the agreements support such a reading.

7

Though they lack third-party beneficiary status, the MNS Defendants nevertheless contend that the contract-based theories of agency and estoppel allow them to force Marriott to arbitration. The MNS Defendants' arguments are informed by "ordinary principles of contract and agency," see *Thomson-CSF v. Am. Arbitration Assoc.*, 64 F.3d 773, 776 (2d 1995) (citing *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980)), as illuminated by federal common law. The Court reiterates that Wisconsin law governs this analysis, a finding that is supported by the case law of this circuit.

In *Stone v. Doerge*, the Court of Appeals for the Seventh Circuit considered a district court's refusal to stay an action pending arbitration. 328 F.3d 343 (7th Cir. 2003). The appellant argued that federal common law, rather than state law, should govern the interpretation of the contract in dispute. The Seventh Circuit disagreed, stating:

> If this were so [i.e., if federal common law controlled], however, then any demand for arbitration would arise under federal law, supporting jurisdiction under 28 U.S.C. § 1331; yet, it is settled that federal courts have jurisdiction over suits seeking to compel arbitration (or enforce awards) only if the parties are of diverse citizenship, or some grant of jurisdiction other than § 1331 applies. See, e.g., *Minor v. Prudential Securities, Inc.*, 94 F.3d 1103, 1104-05 (7th Cir. 1996). Thus most interpretive disputes must be resolved under state law. Federal law does affect, however, the extent to which state law may specify special rules for arbitration: any rule of state law disfavoring or prohibiting arbitration for a class of transactions is preempted, see *Southland Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.E.2d 1 (1984), "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

*Stone*, 328 F.3d at 345. The *Stone* court further explained that "[n]othing in the Federal Arbitration Act overrides normal rules of contractual interpretation . . . ." *Id*. Following the

8

*Stone* decision and the previously discussed *Continental* case, this Court sees no reason to resort to federal common law at this stage of the analysis. Arguments of agency and estoppel must be grounded in the law thus far applied (that of Wisconsin) to interpret the contract and the parties' rights thereto.

Under Wisconsin law, equitable estoppel requires an action, or inaction, that induces reliance by another to his detriment. *Milas v. Labor Assoc. of Wis.*, 571 N.W.2d 656, 660 (Wis. 1997); *Wisconsin v. City of Green Bay*, 291 N.W.2d 508, 512 (Wis. 1980). These elements must be proved by "clear, satisfactory, and convincing evidence." *Milas*, 571 N.W.2d at 660 n.14 (citing *Gabriel v. Gabriel*, 204 N.W.2d 494, 497 (Wis. 1973)). The MNS Defendants, insofar as they have not cited Wisconsin law in their reply brief where the estoppel argument first appears, have not applied the above elements to the instant circumstances. It is not clear how Marriott induced the MNS Defendants' reliance or, even if such reliance existed, how it was to the MNS Defendants' detriment. At any rate, the MNS Defendants have failed to carry their burden of showing that estoppel allows them to enforce the agreements' arbitration clauses against Marriott.

MNS is now left only with its invocation of agency principles. The MNS Defendants do not cite Seventh Circuit cases, let alone Wisconsin state decisions, to support their claim that contract rules of principal and agency allow a non-signatory to compel arbitration. Instead, they cite to cases, all discussing federal causes of action, which involve some

9

application of federal common law. (Supp. Br. 7-8.) None of the cited cases were brought pursuant to diversity jurisdiction.

The MNS Defendants make one substantive argument related to agency: the agents of a principal are bound to the terms of a valid arbitration clause entered into by the principal. (Reply Br. 8.) The MNS Defendants do little more than offer this bare proposition; they do not explain how it applies in the present circumstances. The MNS Defendants have informed the Court that "MNS is a close affiliate of Coastal and Schwartz is the President of both entities." (Reply Br. 7; Sept. 1, 2005 Schwartz Decl. Ex. A.) Schwartz is identified in the agreements as the party to whom questions should be directed. (Reply Br. 2 n.2.) Beyond the representations of the MNS Defendants in their briefs, the Court looks to their exhibits to illuminate the agency argument.

In a declaration dated September 1, 2005, Schwartz provided the Court with the offering memoranda given to Marriott and related to the investment programs. The memorandum for the "Market Link Deposit" transaction identifies MNS's functions as performing "day-to-day administrative and bookkeeping services for the Fund and Coastal." (Sept. 1, 2005 Schwartz Decl. Ex. A, 4.) That same portion of the memorandum identifies MNS as an affiliate of Coastal. (*Id*.) Other sections of the memorandum describes Coastal as the "managing member" of the fund, while reiterating MNS's role as an administrative service provider. (*Id*. 9, 16-17.) Page 39 of the memorandum sets forth MNS's administrative service fees.

10

The offering memorandum for the "Major-Minor" transaction also identifies MNS as an affiliate of Coastal. (Sept. 1, 2005 Schwartz Decl. Ex. B, 6.) MNS's responsibilities, as set forth in this memorandum, involve offering investments to investors. (*Id*. 6.) The "Market-Minor" transaction memorandum also states that MNS and Coastal may engage selling agents who may also offer investments. (*Id*.) The memoranda for both transactions suggest that MNS's duties differ based on the program involved.

Under Wisconsin law, an agent is "[a] person authorized by another to act on his account and under his control." *Meyers v. Matthews*, 71 N.W.2d 368, 375 (Wis. 1955) (citing Restatement (Second) of Agency § 1 at 11 (1958)). A preliminary question is whether an affiliate is an agent. Black's Law Dictionary provides the following definitions for "affiliate":

> 1. A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation. 2. *Securities*. One who controls, is controlled by, or is under common control with an issuer of a security . . .

Black's Law Dictionary 59 (7th ed. 1999). The first definition may apply. Schwartz, as president of both Coastal and MNS, likely exercises control over both entities. Even if the Court assumes that an affiliate is an agent, questions still remain. Are the MNS Defendants claiming that Coastal is akin to their parent corporation? Or, are they claiming that both are sibling corporations overseen by Schwartz? The MNS Defendants argue that Marriott's position "disregards the nature of the MNS Defendants' relationship with Coastal," but they do not clarify the nature of that relationship in terms of the agency argument that they

11

proffer. (Supp. Br. 2.) Put another way, the Court does not understand who is the agent of whom among the defendants. The Court cannot assume that MNS's identification as an affiliate of Coastal renders it a party to the Subscription Agreements. If MNS is merely a sibling corporation of Coastal (that being one possible meaning of "affiliate"), why would MNS be bound by the Subscription Agreements? If both entities are agents of Schwartz, the same question remains.

Lest there should be any confusion, the Court clarifies the scope and grounds of its decision. The Court has *not* addressed whether the substance of certain claims comes within the agreements' arbitration provision. The Court has only ruled that the MNS Defendants have failed to carry their burden of showing that state common law principles of contract allow them, as non-signatories, to enforce an arbitration clause in an agreement entered into by Coastal and Marriott. The MNS Defendants' failure to receive the relief they seek is largely a function of their failure to present relevant legal arguments and a thorough factual presentation to the Court. For example, the MNS Defendants have presented the Court with copies of the Subscription Agreements and offering memoranda. However, they have not performed any thorough analysis of the terms of those documents and how the provisions therein bolster their arguments. The Court, as disinterested arbiter, will not make legal arguments for the parties.

Absent a showing that MNS is either a party to the agreements or can provide a legally sufficient principle supporting its attempt to enforce the arbitration provisions, the Court does

12

not reach the question of whether certain claims come within the arbitration provision or, conversely, whether Marriott may enforce a contract against a non-signatory. Because the Court finds that MNS has not shown that it can enforce the agreements' arbitration provisions, the issue of waiver of the right to arbitration need not be broached.

On a housekeeping note, there are other motions related to the motion to compel that require the Court's attention. With their motion to compel arbitration, the MNS Defendants filed a motion to stay proceedings and discovery pending the outcome of the motion to compel. Similarly, the remaining defendants filed a motion to stay this action until arbitration had been completed. Given the Court's disposition of the motion to compel, these motions must be denied.

The Court also denies Marriott's motion to file a surreply to the MNS Defendants' motion to compel. Absent extraordinary circumstances, the Court will not deviate from the briefing schedule set forth in its local rules.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Defendants Multi-National Strategies, LLC, Michael Schwartz, and John Raby's Motion to Compel Arbitration (Docket No. 46) is **DENIED**.

Defendants Multi-National Strategies, LLC, Michael Schwartz, and John Raby's Rule 7.4 Expedited Motion to Stay Discovery Pending a Decision on Defendants Multi-National

13

Strategies, LLC, Michael Schwartz, and John Raby's Motion to Compel Arbitration (Docket No. 50) is **DENIED**.

James Marriott's Motion for Leave to File Sur-Reply Opposing Defendants Multi-National Strategies, LLC, Michael Schwartz, and John Raby's Motion to Compel Arbitration (Docket No. 66) is **DENIED**.

The Motion of Defendants Opes Group, Parker and Landis to Stay All Proceedings Pending Arbitration (Docket No. 72) is **DENIED**.

Dated at Milwaukee, Wisconsin this 15th day of December, 2005.

          **BY THE COURT**

          s/ Rudolph T. Randa
          **Hon. Rudolph T. Randa**
          **Chief Judge**