# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**JAMES R. MARRIOTT,**

    **Plaintiff,**

    v.

                                                  **Case No. 04-C-0945**

**OPES GROUP, MULTI-NATIONAL
STRATEGIES, STEVE PARKER,
JOHN RABY, JAMES LANDIS,
and MICHAEL SCHWARTZ,**

    **Defendants.**

---

## DECISION AND ORDER

---

On August 27, 2004, James R. Marriott ("Marriott") filed his complaint in Wisconsin state court alleging negligence, breach of contract, and misrepresentation by the defendants. These claims arise out of damages that Marriott allegedly suffered after enrolling in two investment programs offered by the defendants. On September 30, 2004, that action was removed to this Court on the basis of diversity jurisdiction. Most recently, on November 3, 2005, Marriott filed an expedited, non-dispositive motion to compel discovery against Steve Parker, James Landis, and the Opes Group (collectively, "the Opes Defendants").[1]

---

[1] Throughout this decision, the phrase "the defendants" will refer to all of the defendants in this action.

I.   Background

   Marriott's suit arises from allegedly negligent advice given by the defendants from 2001 through 2003 and related to two investment programs, the "Market Link Deposit" transaction and the "Major-Minor" transaction.  Marriott claims that both the IRS and Wisconsin Department of Revenue disallowed certain tax deductions based on his involvement in these investment programs.  Marriott complains that the defendants charged him $175,000 in fees for their advice, negligently misrepresented the tax benefits of the programs, breached agreements to provide sound tax-planning advice, and misrepresented their expertise.

   In the instant motion, Marriott states that the Opes Defendants have failed to produce documents responsive to his requests for production numbered 11, 12, 17, 18, 19, 20, 23, 24, 26, 36, and 37.  Marriott asserts that these production requests are "aimed at discovering what the Opes Defendants knew and when they knew it regarding viability, appropriateness, and projected tax benefit of both" investment programs. (Marriott's R. 7.4 Expedited Non-Dispositive Mot. to Compel Disc. ["the Motion"] 1.)  The Opes Defendants maintain that the requested documents seek information about other clients or potential clients that have no relation to the claims in the present action.  Their objection is one of relevance.

II.   Analysis

   The Court must address a procedural matter before reaching the merits of the pending motion.  Marriott brought his expedited motion pursuant to Rule 7.4 of this Court's Civil

2

Local Rules. That Rule states that "[t]he respondent must file a memorandum in opposition to the motion within 5 days of service of the motion, unless otherwise ordered by the Court." United States District Court for the Eastern District of Wisconsin, Local Rules, Civ. L.R. 7.4(b). Marriott, according to the Certificate of Service for his motion, both electronically transmitted and mailed his motion to the Opes Defendants on November 3, 2005. In addition to the five-day period for responding allowed under the Local Rules, Rule 6(e) of the Federal Rules of Civil Procedure requires the addition of three days to any prescribed period if service is effected electronically or by mail. Fed. R. Civ. P. 6(e); Fed. R. Civ. P. 5(b)(2)(B) & (D). Thus, at the latest, the Opes Defendants' response was due on Friday, November 11, 2005. In fact, their response was received by the Court on November 21, 2005.

Perhaps unaware of this transgression, the Opes Defendants have proffered no explanation for their tardy submission. It is within the Court's discretion to disregard tardy filings or, in the present instance, the Court could assume that Marriott's motion is unopposed. Nevertheless, the Court prefers to resolve matters on their substantive merits and, though exercising lenience in this instance, retains the right to reject future submissions that do not comport with the local rules of this district or the Federal Rules of Civil Procedure. Now, the Court turns to the substance of the pending motion.

Rule 26(b) of the Federal Rules of Civil Procedure explains that information is relevant if its discovery "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). As the rule suggests, the scope of discovery is broad.

3

Regarding specific types of discovery, Rule 34 allows a party to request documents for production or inspection. Subsection (b) of that same rule provides that a party from whom documents are requested must either provide those documents or explain why they are being withheld. Fed. R. Civ. P. 34(b); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996). If disputes arise, Rule 37(a)(2)(B) allows a party to apply for an order compelling discovery.[2]

Before the Court will consider a discovery motion, a party must submit "a written statement by the movant that, after personal consultation with the party adverse to the motion and after sincere attempts to resolve their differences, the parties are unable to reach an accord." United States District Court for the Eastern District of Wisconsin, Local Rules, Civ. L.R. 37.1; *see also* Fed. R. Civ. P. 37(d). In accord with this requirement, the Court received the declaration of Lee M. Seese, which states that counsel for both parties discussed the discovery impasse that is now before the Court. (Decl. of L. Seese ¶ 4.) While a single conversation does not constitute "sincere attempts" to reach a resolution, the Court, based on the filings of the parties, finds the movant made an effort to resolve differences and, at any rate, further discussion would have proven fruitless.

In his motion, Marriott asks the Court to compel a response to his Production Request 26. (Mot. 1.) However, that request was neither briefed by Marriott nor contested by the Opes Defendants. This is likely an oversight by both parties. More importantly, Marriott's

---

[2]Marriott requests relief pursuant to Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure. However, insofar as Marriott asks the Court to compel responses to document requests, Rule 37(a)(2)(B) controls.

4

counsel, in his declaration submitted to this Court, omits that request when identifying the matters that were discussed by the parties in an attempt to obtain a resolution before coming before the Court. If Marriott did not attempt to resolve any disputes related to Request 26, he has failed to satisfy the meet-and-confer requirement of this Court's Local Rules with respect to that particular request. Therefore, the Court will not compel the Opes Defendants to respond to Production Request 26.

Regarding the other requests, the Opes Defendants argue that Production Requests 11, 12, 23, 36, and 37 are improper. These requests seek the production of documents related to the identities of other clients and marketing documents used by the defendants for promoting the "Market Link Deposit" and "Major-Minor" transactions. Marriott contends that this production will allow him to discover what the Opes Defendants knew and when they knew it. The Opes Defendants counter that those requests are irrelevant insofar as they concern the identity of other clients and the marketing of the investment programs to parties other than Marriott. They reason that:

> [a] statement to client A that the . . . transaction would or may have tax benefits to him would not tend to prove that the Opes defendants [sic] knew that a similar statement to plaintiff was false. And, of course, it would be bizarre to speculate that the Opes defendants contradicted what they allegedly told plaintiff, by telling other clients to whom they 'marketed' the strategy that it would *not* have tax benefits.

(Resp. 2.)

The Court disagrees. The Opes Defendants' statements or representations to other clients may show that they (the Opes Defendants) possessed certain knowledge and may even

5

have been making different representations about the same programs to different clients. Such information readily passes the requirement of relevancy. Accordingly, the Opes Defendants must respond to Production Requests 11, 12, 23, 36, and 37.

Next, Requests 17 and 19 seek documents showing the number of clients that entered into the "Major-Minor" and "Market Link Deposit" transactions for the years from 1999 to 2004. Requests 18 and 20 seek information about the transaction fees paid by the clients for these programs. Marriott justifies these requests as follows:

> Evidence showing that the Opes Defendants stopped marketing the Transactions once the IRS classified them as abusive tax shelters is relevant to Marriott's misrepresentation and professional negligence claim; it is evidence that the Opes Defendants knew or should have known that their representations regarding the viability, appropriateness, and projected tax benefit of either transaction was false or misleading. Evidence that the Opes Defendants were selling these transactions to large numbers of clients and collecting high fees as a result is evidence that the Opes Defendants sold the Transactions to anyone they could without regard to their viability and appropriateness to that particular client. Evidence that the Opes Group received large fees for the Transactions also shows their motive to make misleading statements.

(Mot. 2-3.) The Opes Defendants argue that their fees reveal nothing about the appropriateness of transactions for other clients and do not establish a motive to mislead.

Marriott's reasoning is not compelling. One would fully expect the defendants to have stopped promoting or selling the investment programs once the IRS declared those programs to be abusive tax shelters–assuming, of course, that the defendants did not already possess this knowledge. The Court does not see how it is relevant that the defendants conformed their strategies or business activities after learning of the IRS's characterizations

6

of the programs. What other option was there at that point? By contrast, if Marriott thought that the defendants continued selling the programs once they knew how the IRS viewed them, such information might suggest misleading conduct. This is not Marriott's argument, however. Furthermore, the documents requested would not help establish whether the defendants knew that they were marketing abusive tax shelters. Marriott has not shown the Court that Requests 17 and 19 are relevant.

Regarding Requests 18 and 20, Marriott, as quoted above, argues that, if the defendants were selling these transactions to many clients and collecting high fees for the same, this would show that they were marketing the fees to clients regardless of their viability or appropriateness. The fees, according to Marriott, would hint at a motive for making misleading statements.

The Court agrees with the Opes Defendants: The number of clients and amount of fees collected for the programs does not have any connection to the suitability of those investments for clients. The Court recognizes that the Federal Rules allow great latitude in the scope of discoverable materials, but Marriott's request seems more akin to a fishing expedition. Receipt of money, in whatever amount, can always be an alleged motive. Because the Court is not persuaded that the requests are relevant, the Opes Defendants do not need to respond to Production Requests 18 and 20.

Request 24 seeks documents showing the number and type of transactions, other than the two at issue in this action, that the defendants marketed to other clients and which were identified by the IRS as abusive tax shelters. Marriott explains that

> [e]vidence that the defendants engaged in a pattern of marketing transactions that the IRS considered abusive tax shelters, particularly if it shows that the defendants were trying to stay one step ahead of the IRS, would lend support to Marriott's claim that the defendants knew or should have known that their representations regarding the viability, appropriateness, and projected tax benefit of both Transactions was false or misleading.

(Mot. 3.) The Opes Defendants counter that documents involving other transactions and other clients have no bearing on the veracity of representations related to the two transactions at issue in the present action.

Though Marriott's claimed rationale is somewhat strained, it does establish the relevance of the documents requested. The Court understands Marriott to be claiming that, if the defendants had previously promoted other transactions that were deemed abusive tax shelters, one could infer knowledge about how the IRS might view the "Major-Minor" and "Market Link Deposit" transactions. And, if the defendants proceeded in light of this knowledge, Marriott may be able to better establish some element of liability.

Having reviewed the Opes Defendants' objections to Marriott's production request, the Court now considers Marriott's request for fees and costs associated with his motion to compel. Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure states that the Court shall require the party whose conduct necessitated the motion to pay the movant's expenses and fees unless "the motion was filed without the movant's first making a good faith effort to

8

obtain the disclosure or discovery . . . or the opposing party's nondisclosure . . . was substantially justified, or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(4)(A). "Substantially justified" means that the dispute was genuine or that reasonable people could disagree about the appropriateness of the contested matter. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court will not award Marriott any fees or costs incurred in bringing the instant motion. First, the motion has been only partially granted. Second, the Opes Defendants articulated reasonable, even though ultimately unsuccessful, objections to certain requests. This was not an instance of one party raising objections for improper reasons. Rather, the disputes between the parties were genuine.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Marriott's Rule 7.4 Expedited Non-Dispositive Motion to Compel Discovery (Docket No. 79) is **GRANTED** in part and **DENIED** in part.

The Opes Defendants shall respond to Document Requests 11, 12, 23, 24, 36, and 37 no later than January 20, 2006.

Dated at Milwaukee, Wisconsin this 22nd day of December, 2005.

                                        **BY THE COURT**

                                        s/ Rudolph T. Randa
                                        **Hon. Rudolph T. Randa**
                                        **Chief Judge**